v. Stephen Stockman, and you are obviously ready to proceed. Yes, Your Honor. You may. May it please the Court. David Warrington on behalf of the appellant Stephen Stockman. Stockman was convicted of a violation of the Federal Election Campaign Act for coordinating a mailing that caused an excess contribution to his campaign because it advocated for him and attacked his opponent. Unfortunately, the mailing at issue did not contain the language necessary for it to be treated as a contribution to his campaign. You're starting with just count 12, then? I'm starting with count 12, Your Honor, because that mailing did not include any express advocacy. As this Court well knows, for more than four decades, since the case of Buckley against Federal Election Campaign Act to include only those communications that contain express advocacy. The Court can look at count 12 in the jury instruction two ways, but I think both ways yield the same result. The first way is to look at the instruction as it's written and apply Buckley's cabining to the language of the statute. If the Court does that, there's a failure of proof on count 12 because there's no express advocacy in the mailing. The second way that the Court can look at this is to look at the instruction and treat it as the government and the district court treated it, using those terms in a colloquial sense. And if the Court does that, that jury instruction is infirm, and the count also fails. The government would argue, or likely argue, and did in their brief that some . . . I'm just going to interrupt you. Your time is running. It seems to me there are three ways to look at it. One, the indictment didn't state a crime. There was a motion to dismiss. It was denied. On your brief, you just give two sentences to that issue. Or there was instructional error defining it. Jury had no idea what the elements were. Government hasn't said that that's necessarily a way. I don't see a contemporaneous objection. The third would be, as you say, there was no proof of express advocacy, which is a requirement. Which is your principal argument? My principal argument . . . It doesn't state a crime, legal instructional error, or Rule 29 lack of proof? Rule 29 lack of proof. That's our principal argument. So you agree, the lawyers before you, you weren't trial counsel, didn't object to the jury instruction on Count 12? They did object to the jury instruction on Count 12. If the Court goes back and looks at the discussion . . . We've got to have a record site for that, a specific record site during the jury charge conference, where defense counsel, the three of them, said, Your Honor, express advocacy should be in there, not specific advertising advocacy. I can get a site for you, Your Honor . . . When you stand back up? When I stand back up. Okay. Because I believe that's in our brief. And yet you are still saying the better argument is there was a lack of proof about express advocacy, whatever the instruction was given. That's correct, Your Honor. Because that really, the law is really not debatable in any . . . Well, do you have any criminal case? Any criminal case where a circuit has said that this crime requires express advocacy? No, and I would also argue the flip side of that is true also. There is no criminal case that says that this statute can be read this way, in this manner. That is the plain . . . express advocacy is not in the statute. Express advocacy is not in the statute, but the definition of expenditure in the statute has been limited by Buckley, and all of the cases since Buckley follow that, including this circuit's case, Center for Individual Freedom v. Carmouche, and the . . . You know how the briefs . . . you both are very sophisticated. They've said, well, McConnell then modified it. It was limited to independent expenditures. Carmouche is in that world. McConnell squarely interprets this statute and doesn't say express advocacy. Actually, McConnell does not interpret this statute. McConnell came about . . . the issue in McConnell is a third category. Buckley set out two categories of speech, express advocacy, which can be related . . . regulated under FECA, and issue advocacy that cannot be regulated under FECA. McConnell . . . the issue in McConnell was a third category that arose in the Bipartisan Campaign Reform Act of 2002 called electioneering communications, and electioneering communications is a very specific creature of statute. It is a broadcast satellite or communication ad that is targeted to the relevant electorate that mentions a candidate's name within 30 or 60 days of a primary or general election. That's it. And McConnell was dealing with that statute, and what McConnell said . . . I mean, you can read the heading in McConnell that says, Bicker's Treatment of Electioneering Communications as Contributions. What it says is McConnell's following Buckley because the definition of electioneering communications is so limited, it does not fall victim . . . I'm still a little confused by what your argument is as to reversible error, because the jury had proof for what was charged. So it gets back to me to think you should have moved to . . . you should have said this doesn't even state a crime. Or at least objected and said, Your Honor, you've got to include the element we think exists even though no court's ever said it does in the criminal context. That was argued at the motion to dismiss stage. That was also argued post-trial motion. But you remember what the answer was at the motion to dismiss stage. Judge Rosenthal said, this looks factual. You're arguing about whether the conservative news is express advocacy or not. We're just going to wait. There wasn't a legal determination of deficiency. Well, there should have been. Yeah, but then you give two sentences to it in your brief. Well, I think it's fairly obvious it doesn't need to be explained that in greater detail because the issue is there's no definition of . . . no cabining of the term that has been cabined for 40 years in the statute. That's not an argument that takes five pages of briefing. That's a fairly straightforward argument. Well, 40 years, never a criminal case ever to have said this is a non-statutory element in a criminal case. So it would benefit from briefing. But I don't mean to control your time. Most of the convictions against your client are fraud counts. That's correct, Your Honor. You may want to move to those. I do, but I do want to also point out that the flip side of that is true. There are no criminal cases . . . I agree with that. . . . on the other side. So to the extent we're there, we're in uncharted territory. The second issue that I'd like to discuss is the inclusion of the unnecessary and irrelevant instructions on 501c3 and 501c4. Was there a contemporaneous objection when those instructions were given? Your Honor, there . . . no. What the jury . . . We're on plain error review with regard to those. We are with regard to that issue. But I would also point out that in the jury instructions submitted by defense counsel, they did not include an instruction on those two issues, on those two types of organizations. There were three defense counsel here. You were not given much help with the arguments you're making. Your Honor, I would agree with that characterization. So when you say they didn't include an instruction, how does that help you? Well, I think there is some support in the law when you, in jury instructions, when you propose a separate jury instruction and the court adopts another jury instruction, you preserve the objection to that. And in this case, what we have is a proposal of no jury instruction on that issue. So you're still losing me. I still don't see how that helps you. Well . . . It's one thing to say you're giving an instruction on this, and this is with regard to 501c3 status and then the second one. I'm giving an instruction on this, and you object and say no. If you're going to talk about that, this is what the law . . . this is the correct statement of the law that I'm offering. You offered no proposed correct statement of the law and didn't object to the statement of the law that was being offered. The only objection that was made was that they wanted . . . the defense counsel wanted some language added to the instructions that said these organizations can pay people for work that they did. The court accepted that, added it to one of the instructions but not the other. So, you know, in that sense, that's the only objection we have on the record for that. But I still think we would submit that the inclusion of these instructions . . . Judge, is your objection both that it was unnecessary and that it was misleading? Yes, Your Honor. It was unnecessary and misleading because it was irrelevant. What a 501c3 and c4 could do is not an element of the mail or wire fraud statutes. And the jury instructions incorporated the 501c3 and c4 instructions into the entire set of jury instructions. And what we saw from . . . There was expert testimony about these organizations. I mean, as you point out in your brief, it's sort of a tough fraud case. It's built around tax complex. It's built around campaign finance complex. There were First Amendment arguments. Experts are going to get on stand, so . . . There were no . . . Judge, I thought the court allowed you to put on an expert. The court did allow an expert. The expert wasn't called. Okay. So, Judge Rosenthal's thinking, I'll just read the statute. And no one disputes that she read the statute correctly. I thought your argument was then, without going further into case law interpreting that statute, the jury was confused. And we know they were confused because of their question. I thought that's the direction of your argument. That is the direction of the argument. But even before that, if you include them, that's what you have to do. If you didn't include them, you wouldn't have this problem. That's the primary concern. What case do you have that it's plain error reversible, reversible error under plain error review when a district judge does correctly read the statute implicated? I can't think of one. There's no case that's directly on point, but the case I believe Farley talks about. Farley, I wrote, so I know that one pretty well. Farley, the district judge didn't, at least as I wrote it, the district judge didn't use the pattern and then it mixed different statutes. That's pretty egregious. Here, Judge Rosenthal read the correct statute. But it was an irrelevant statute. And it was an irrelevant statute that you can see clearly from the jury's question that they took her direction and incorporated it into their consideration. But then, again, you've got difficulty. This is the predicament of appellate counsel. Instead of when they asked the question, defense counsel saying, Your Honor, now you've got to clear it up and this is where you have to go. You have to make sure exclusively is understood to mean primarily. They didn't say that. They didn't object. They didn't say you're wrong about referring to the full set. That's correct, Your Honor. Okay. It's a tough predicament. That's what we're left with. I know. But I think it's clear that you can see how those instructions did impact the jury's deliberation. Led to a question. Led to a question, and the judge had an opportunity to clear it up. That's assuming that Judge Suos-Ponte had to perceive this subtlety. And no one brought that to her attention. I concede that. But here, in the sense that what we're looking at is the entire case on the fraud counts, the mail and wire fraud counts, is built off of an argument to the jury that using these 501c3 and c4 organizations, while the technical definition is correct, they are ill-defined because it's not further explained, allowed the jury to look at that and say, well, that's essentially evidence of the specific intent, and I would point to the argument. His organizations ended up doing the money slightly secondary anyway. Wasn't the whole defense at trial for your client, hey, these two big donors knew, eyes wide open, they were giving him money. They weren't defrauded, and this is a straightforward false pretense to get their money. I thought the whole defense wasn't really what he's doing with the money in his organizations and their tax status. It was basically government, you're going after the wrong guy. That was the primary argument. The issue with that argument is certainly the jury can look at that and make the decision, but they're doing so in a context that is completely skewed because of the irrelevant jury instruction, and that's where we end up having this question, what was he actually convicted of? Was he convicted of mismanaging nonprofit organizations? Was the use of the nonprofit organizations, does that evidence of intent? Clearly the government argued that throughout trial, culminating in closing arguments. It's bogus. It's sham. These are markers of fraud. That's correct, and the closing argument said. I objected to any of those witness statements or attorney arguments. No contemporaneous objection. Here we are again. Okay. But at the end, in the closing argument, and as you know,  look, the use of these organizations, that's a specific marker of fraud. So clearly the jury, look at that first question, clearly the jury grabbed a hold of that and decided, and plainly, the 501c3 and c4 organizations, what they can, what they can't do with money, is not an element of the mail or wire fraud statute. Did you have a special verdict form? No. We had a verdict form was guilty, yes. Very general. Very general. There wasn't a request to have a special verdict form that got denied, was there? No, there wasn't. So when you say you don't know what they decided what they meant, a special verdict form may have answered those questions. That's correct, Your Honor. All right. We did argue a bit of that in the briefing. But with that as the entire backdrop of the trial, we would submit that that infected the jury to a way that it changed the arguments that counsel could make. It changed the arguments that were available to appellate counsel. It completely changed the scope of the trial, allowed the defendant to be convicted in a way that maybe would not have happened had those instructions not been there on those 501c3 and c4 organizations. Also, with the money laundering counts, all those money laundering counts are attendant to the mail and wire fraud counts. So if those mail and wire fraud counts fail for any reason, those money laundering counts fail as well. The one thing that I would like to point out, and I'm closing in on my time here, is if you look at count three and four, which is the U-line contribution for the mailing that actually served as the basis for the count 12 conviction, clearly Mr. U-line got the majority of what he wanted, what he agreed to. He wanted to pay for a mailing. The government argues that it wasn't a true independent expenditure. Well, again, we're using a term that has a very specific and defined meaning. It wasn't an independent expenditure. An independent expenditure. I see my time is up. Thank you, counsel. Good morning, Your Honor, and may it please the Court. Robert Heverly on behalf of the United States of America. You may proceed. Your Honor, I'd like to begin, if I may, with the argument that Mr. Warrington just made at the beginning of his argument concerning the Federal Election Campaign Act and the express advocacy concept. Taking a step back from the facts of this case for a moment, what is critical to realize concerning this express advocacy argument is that the Supreme Court has consistently demarcated two different concepts in federal campaign finance law. Independent expenditures, on the one hand, and contributions, which include coordinated expenditures, on the other. In Buckley v. Vallejo, the Supreme Court was analyzing the Federal Election Campaign Act and was determining whether or not certain statutory requirements governing independent expenditures and contributions were constitutional, primarily under the First Amendment. And what the Supreme Court held in Buckley v. Vallejo is that there are different standards that apply to those two different categories of political activity. With respect to independent expenditures, individuals' First Amendment interests are more pronounced, and the risk of quid pro quo corruption and the appearance of quid pro quo corruption is substantially reduced. As a result, independent expenditures are held — excuse me, regulations of independent expenditures are held to a higher standard. When you are dealing with contributions, however, because there is the risk of quid pro quo corruption and the appearance thereof, the government may regulate those contributions if the standards are closely drawn to achieve that important government interest in combating quid pro quo corruption. The Supreme Court in Buckley v. Vallejo, when they created the express advocacy test, applied that only to independent expenditures. That is, independent from the candidate expenditures that are not done in coordination with the candidate or at the control of the candidate. In this case, these facts present a quintessential case of an expenditure that is secretly done under the candidate's control and is therefore a campaign contribution. In not a single case that I'm aware of, not a single case has Mr. Stockman cited on appeal, has any court ever imported the express advocacy requirement into the context of campaign contributions, including the context of coordinated expenditures, which are one type of campaign contribution. But the more relevant question, and I don't remember your brief giving it, is what circuit has ever stated that that limiting requirement doesn't exist in the context of this felony charge brought in Count 12? Your Honor, I'm not aware of a circuit case, but I am aware of a Supreme Court case, which is the McConnell decision. But McConnell's not a criminal case. That's correct, Your Honor. Okay, so you say you're not aware of any case that has ever imported it, but you don't have a single case that has excluded it. Well, Your Honor, we have numerous cases involving coordinated expenditures, numerous rulings by the FEC, numerous regulations that have all operated on the fundamental principle that coordinated expenditures do not require a showing of express advocacy. Do you know of any circuit pattern instructions giving the elements of this particular crime? I do not, Your Honor. Because, I mean, it is putting someone in jail for their speech, so naturally you would... Is this an issue of first impression nationwide? It is not, Your Honor. Because although this is a criminal case, and I understand the Court's question to be focused on criminal precedent, what we do have is a Supreme Court decision interpreting the very statute at issue here. Not a criminal case, not a case in which there was a knowing or willful violation, but certainly interpreting the very statutory provision. Well, correct me if I'm wrong. I say things as certainties, but that's really asking you to challenge back. My memory of the government responding to the motion to dismiss was we'll wait and we'll prove the facts. It wasn't a clear statement that this isn't a legal requirement. I may be wrong. Do you remember the motion to dismiss pleadings? I do, Your Honor, and I don't recall the particular statement, but my general recollection is that that was our argument, that in fact there is no express advocacy requirement under the statute. I think that's the correct legal argument. That would be the correct argument, consistent with your brief position now. I thought the government said, you know, we charge what the statute says. That's all we have to do. It's a bare-bones indictment, and we're going to prove it. His objection is a factual one. And then I know I'm right when I said I read the closing arguments of his attorneys, and his closing argument said, look at this exhibit to the jury. Look at conservative news. It's issue advocacy. It's not for this guy and against this guy. So their whole defense, but correct me if I'm wrong, the entire defense as to Count 12 was this element. So if you're wrong, he clearly was prejudiced. Do you agree or disagree? If we are wrong, if in fact express advocacy is required for coordinated expenditures and therefore for campaign contributions, then yes, I would concede that, because this document does not contain the magic words from Buckley. However, if I am wrong, if in fact McConnell doesn't say that. I'm guessing you both live in this world much more than I do, so that's an important contention. I was startled to see this magic word requirement because it seemed to me the instruction said specific advocacy. That's enough, but it isn't. You're saying he's arguing. You're just saying the element isn't there. It certainly isn't in the statute, and no court has ever said it should come in. Correct, Your Honor. And the Supreme Court has interpreted this very statute and has affirmatively held. He says in Carmouche we distinguish McConnell. Well, in Carmouche, this court was dealing with a statute regulating independent expenditures, Your Honor, so it goes back to this longstanding distinction between independent expenditures and campaign contributions, including contributions in the form of coordinated expenditures. And I would just point out additionally, if I am wrong, if in fact there is an express advocacy requirement for coordinated expenditures, then the entire system of campaign contributions that has existed since Buckley v. Vallejo is eviscerated because any candidate who's running for Congress, instead of being subject to these contribution caps and these disclosure requirements, can simply raise and spend unlimited amounts of money through outside groups that are under their control. That has never been the law. That cannot be the law. That would be completely inconsistent. Is there any scholarship in this area that's relevant? The Buckley-McConnell tension as it pertains to criminal prosecutions of candidates for federal office? I would not be surprised if there were, Your Honor. I'm not aware of any off the top of my head, but I know this is an area that has generated quite a few articles. What's the relevance of the fact that they didn't object? Would you say it was substantially covered anyway, or would you concede also it wouldn't be? It would be reversible under plain error even. Well, Your Honor, I think that it is plain error review. That's the significance of the fact they did not object. Did you argue that in the brief? You didn't really argue plain error as to count 12. Well, I think we did, Your Honor. We did say that, in fact, arguably he has forfeited this. Yeah, arguably. That's not very strong. I thought in a footnote you said, well, we're not so sure, and I couldn't see why the government wasn't arguing plain error. You were strong as to it as to the fraud counts, but then you were more tentative as to count 12. Yes, Your Honor, and I admit that, but I also think we have preserved our ability to argue forfeiture here, that, in fact, he did not object at the proper time. The reason we expressed some nuance is that, as Mr. Warrington stated, Mr. Stockman did, in fact, make this argument at other points in the proceeding. However, when we were at the jury instruction conference, the informal and the formal charge conference, he did not request an instruction on express advocacy, and that was the time to bring this to the Court's attention to preserve the issue. With respect to this argument that Mr. Warrington made, he pointed to the McConnell decision, and this is specifically at 540 U.S. 202, and he described the heading of the particular section of the opinion as stating BCRA 202's treatment of electioneering communications as contributions. If the Court looks at the opinion, that's not actually what the heading says. I think Mr. Warrington was mistaken. What it says is not electioneering communications. It says BCRA 202's treatment of coordinated communications as contributions, because coordinated communications have always been contributions, just like any coordinated expenditure. McConnell was not just limited to addressing electioneering communications. It was addressing the very statute at issue in this case, and when the Court refers to section 315A7B, that has now been recodified at section 3116A7B, which is the particular statute at issue here. That is the statute the Supreme Court has held, does not require a showing of express advocacy in order to constitute a campaign contribution. What was the relevance of 501C3, 501C4 statute? How were those relevant to these accounts? It was relevant to provide context for the jury's analysis of the facts, Your Honor, because this case involved a number of organizations that were registered with the IRS pursuant to section 501C3 and section 501C4. There was a great deal of testimony concerning the nature and the purpose of such groups, and so it was important to provide the jury with some background and context regarding the nature and purpose of these groups as a matter of law. Mr. Stockman not only did not object to this instruction, he affirmatively contributed to it. And then at the end, when the court had made the modification he requested, his counsel said, that's fine. Mr. Stockman had a full opportunity to ask for additional statutory language or regulatory language to be included in the instruction, and he did not do so. That is a big obstacle, but then the jury right away, immediately in deliberation, says, we're confused. We're confused about these organizations he set up and what they can and can't do with the money. So that sharpens the focus. At that point, the court's got to get the instruction right. And as I understand his argument, the court didn't then say, well, even though the statute says this is the exclusive use for the money, case law has always said it's just their primary use. They can spend money elsewhere. And I think what he's saying is that just went to the heart of the case. The jury could have thought the way the money was spent was illegal because it wasn't exclusively in these categories, but in fact the law allows it to go elsewhere, and the district court should have sort of intuitively known that. And I do understand his argument the same way, Your Honor, and I have two responses to that. First, with respect to this idea that the instruction was somehow inaccurate on the law, I don't think that's correct. And Mr. Stockman has provided no authority indicating that the very statutory language, the plain text of the statute, is somehow inaccurate or did not convey the proper legal standard. You dispute that exclusively, actually, and the tax context has been understood to mean primarily. I think in certain contexts, and specifically when looking at 501c4 groups and determining whether or not these groups can qualify as 501c4 entities, the IRS has said the mission or the operations of the organization must be primarily something other than political. But that doesn't go to the text of 501c4, which describes the very basic nature of the group. That is a group that's organized exclusively for social welfare or for other purposes. These things aren't necessarily inconsistent, doing things that are political and operating for social welfare. All the IRS has said as an addition to that statutory text is if your purpose is primarily political, we are going to say as a matter of regulation that you do not qualify. These are mail-and-wire fraud counts, right, which they're over before the eventual use of the money anyway, right? That's correct, Your Honor. The focus is the depriving of the donors their money through a lie? Yes, Your Honor. And that goes to my second point, which is the jury was directed consistently by the court's instructions and then by the court's response to that jury note, which, again, Mr. Stockman did not object to, to look at the elements of the offenses, including specifically the elements of the fraud offenses and the element that Mr. Stockman was required to have a specific intent to defraud in order to be guilty of these offenses. That response to the note, in conjunction with the jury instructions themselves, in conjunction with the arguments of counsel, which were very clear on this issue, pointed the jury to the question of whether or not Mr. Stockman was guilty of fraud, not whether he was guilty of some sort of regulatory violation or tax crime related to these offenses. I'm jumping, just to make it difficult for you, but on the Rule 29 issue, if that's what it all came down to, what was the government's best evidence that instead of these two donors knowing exactly where their money politically was going, they were innocent victims of his greed? What's the best evidence? There was overwhelming evidence, Your Honor. But to pick some of the best evidence, in 2010, with respect to the solicitations from Mr. Rothschild, that money was never used for any of the purposes that were portrayed to him and was siphoned off immediately to pay for other things. Did the government put Rothschild or the other fellow on the stand? Did they ever just say, wow, I was totally defrauded? Not Mr. Rothschild, because he was deceased by the time of trial. Mr. Uline did testify and did say that he understood, based on the representations that were made to him by the defendant and his agents, that this money would be used for certain legitimate nonprofit purposes, and that had he known that that money would instead have been used for personal expenses, campaign expenses, he would never have made these donations. So that's part of the best evidence of the fraud. But in addition, there was testimony from Mr. Stockman's two accomplices, his co-conspirators in the scheme, who testified as to his fraudulent intent. Mr. Dodd testified that in 2012 he had a conversation with Mr. Stockman that made clear to him that Mr. Stockman was in the very process of defrauding Mr. Rothschild, and Mr. Dodd continued to engage in those activities with Mr. Stockman. Similarly, Mr. Dodd testified regarding his meeting with Mr. Uline and Mr. Stockman concerning the pitch to get money for the Freedom House and what Mr. Stockman said to Mr. Uline about how that money would be used and then how that money was actually used, including by routing illegal conduit contributions through Mr. Dodd's personal account and to Mr. Stockman's congressional campaign account. And then finally, in 2014, some of the best evidence was the testimony from Mr. Posey and Mr. Kurt Wagner, who testified regarding solicitations that they made to Mr. Uline at Mr. Stockman's direction for a supposed independent expenditure. But because that was being done at Mr. Stockman's direction, because, as Mr. Posey testified, Mr. Stockman was always in complete control of Center for the American Future, that was never intended to be an independent expenditure. It was always intended to be a coordinated expenditure. And Mr. Uline testified that he would never have made that contribution, that donation, to Center for the American Future if he had understood that was the case. This is a straightforward money property fraud where Mr. Stockman, over and over again, demonstrating a pattern over a period of four years, lied to donors to obtain money for what he said were charitable and nonprofit purposes and then almost immediately routed that money to his personal accounts and his campaign accounts, which then gave him a substantial and secret advantage in two different federal elections for high federal office. Now, Mr. Warrington mentioned this briefly, and I just want to reiterate because I think this is also important on the issue of the C-3, C-4 instructions. Mr. Stockman not only had a full opportunity to ask for additional language to be inserted in that instruction and did not. Mr. Stockman also had the opportunity to call an expert witness to provide testimony concerning all the nuances of nonprofit fundraising practices that he wanted. And this was over the government's objection. The district court held a Daubert hearing at which the expert testified, and in fact, during that hearing, he was cross-examined by the government. The government argued afterward that he should not be allowed to testify because his testimony would consist of legal opinions and would otherwise be improper. The district court overruled that and said Mr. Stockman can call him as a witness. Mr. Stockman elected not to. But on appeal, this has become one of his chief arguments for reversal, despite the fact that he had every opportunity in the district court to provide that additional context to the jury if he thought it was appropriate. That appears to have been a strategic judgment by Mr. Stockman, that putting that expert on the stand, subjecting him to cross-examination, might end up hurting him more than it helped him, and Mr. Stockman should live with that strategic determination. Mr. Warrington also has mentioned that the statute was irrelevant and that the 501c3, c4 instructions were irrelevant to the charged offenses. There is no rule that I'm aware of, and Mr. Stockman has not cited any cases to this court stating that the district court cannot give a jury instruction that is on something other than the elements of the offense. In fact, it is routine for district courts to provide instructions to the jury that provide context and direction  that don't go directly to the elements of the offense. And so even though this was an instruction that dealt with background concerning the nature and purpose of c3 and c4 entities, that was not something that was improper. Mr. Stockman, again, did not object to that, and the jury is presumed to follow the judge's instructions and also to understand the district court's answer to its note. Here, because that note was responded to with an accurate direction to the jury that they go back to the jury instructions, that they focus on the elements of the fraud offense, including specific intent to defraud, there was no error, much less plain error. But, you know, when you have just a straightforward fraud case, um, to start instructing on civil tax circumstances or other regulatory structures can be perilous, at least if you're departing from the statute, and certainly if defense counsel then objects and says, this is gonna really muddy the waters. But here your point is, both parties wanted this small amount of context and it tracked verbatim the statutes? That's exactly right, Your Honor. This was not a case in which this was anything that was controversial at trial at all. This was a short instruction that was delivered at the request of both parties that provided the court, or excuse me, provided the jury with important context regarding the nature and purpose of non-profit entities. It was not something that was the subject of a fight or extended discussion. This was something that was quoting the plain text of the statute accurately, accurately described the law, and was not objected to by either side, just like the answer to that jury note. Uh, and I can see I'm getting short on time, Your Honor, so I'd like to address briefly, if I may, the issue of the good faith instruction. Uh, Mr. Stockman has argued that the district court erred by not providing a good faith instruction with respect to certain counts of the indictment. He preserved that error, I believe, with respect to count 12, not with respect to the other counts that he raises that issue, uh, concerning on appeal, and so with certain counts it's plain error, with certain counts it's abuse of discretion. But with respect to all counts, uh, in which he is asking or saying that there should have been a good faith instruction, all of those counts required a showing that the defendant acted willfully. That is, either in the tax context with the specific intent to violate a known legal duty, or in the election law context, in the section 1001 context, with knowledge that his conduct was generally unlawful. That sort of intent, knowledge of a, um, of a course of conduct that is generally unlawful, is necessarily inconsistent with good faith. And that's what this Court found and held in the Simcanyon case in the context of tax offenses, when this Court said the district court was not required to deliver a good faith instruction because the district court did instruct the jury that to find the defendant guilty, they must find that he acted willfully with the specific intent to violate the law. And in connection with that, he wasn't prevented from arguing that he was acting on advice of counsel. He was not prevented from arguing anything concerning his intent during closing argument, Your Honor, that I recall. And in fact, he did argue willfulness. He mentioned the willfulness. He did argue? He did argue willfulness, Your Honor. He mentioned the willfulness requirement in his closing argument, as I recall. You're telling us our law in this area is very clear. You never have to give good faith if you instruct that willfulness be found? Correct. Because the requirement of willfulness is necessarily inconsistent with good faith. A specific intent to violate the law, if you have that, you cannot be operating in good faith, Your Honor. That's what Simkanian says. And I see my time has expired. Thank you, Counsel. Rebuttal. Your Honor, I would just like to point out one thing that Mr. Heavily just said, that the instructions on 501 C3 and C4 organizations were requested by both parties. That's actually incorrect. They were requested by the government. The proffered jury instructions by the defense did not include those instructions. During the discussion at the jury charge, the defendants did ask for this piece that we discussed earlier about you can pay these organizations can pay people for work they did, but they did not ask for the instructions. And they got that for some reason for one of the instructions, but not for the other. And I don't know if that was just an oversight. And to be clear, the expert who wasn't called would have opined about the 501 C3s, 501 C4s, and what the implications of that were. That's correct, Your Honor. Mr. Heavily spoke about a couple of different types of issues or terms that are very specific. He used them in, again, used them in a colloquial sense when he talked about independent expenditure. In the sense that Mr. Heavily was talking about, it simply means a spending of money that is independent from the campaign. However, under federal law, an independent expenditure is not that broad. To be an independent expenditure, it requires express advocacy. If it doesn't require express advocacy, it's not regulated under FECA. You can have an issue advocacy piece that is coordinated. There are certain circumstances in the regulations, not the statute, but in the regulations that may have covered this circumstance, but Mr. Stockman was not charged with a violation of the regulation. He was charged with a violation of the statute. The language of the statute, the definition of expenditure used in Count 12 is exactly the definition that was cabined by Buckley. And in going to McConnell, when you look at that section where McConnell talks about the treatment of electioneering communications, what it says, what the court says there is that, just like in Buckley, because the limitation on electioneering, because the definition of electioneering communications is so limited, it doesn't suffer from the same overbreath that we cabined the definition of expenditure for in the Buckley case. So McConnell does not support the notion that Buckley's magic words, express advocacy concept is no longer good law. And that's exactly how Carmusch talked about it in this circuit. So they also, Mr. Heberle also talked about a coordinated expenditure. Well, again, you can't use those terms in this context in a colloquial sense. You have to use them in the terms that are found in the statute and the case law that's developed over the statute. This may be slightly reiterative of my earlier question, but both of you know this area of law and neither of you say there's law describing the specific elements. Is that because the government never charges this? Or we just don't have reported decisions describing the elements? Well, because under the statute, it's fairly well understood that that statute where expenditures is used and the definition of advocacy. Okay, but then you'd think the government has just not charged violations of that, even accepting your element? I haven't seen any, Your Honor. I am familiar with FEC cases in the civil context where that distinction is routinely used to dismiss cases that are brought. So for those reasons, Your Honor, we would request that the case be remanded for trial where appropriate and vacation and counsel. Thank you, counsel. The court will take this matter under advisement. We call the next case of the day, which is cause and number .